UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| MYRA JEAN NEARON and RONALD NEARON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:14-CV-073 JD ) |
| MENARD, INC., | ) ) |
| Defendant. | ) |

## ORDER AND OPINION

This cases arises out of Myra Jean Nearon's slip and fall at a Menards store in Lafayette, Indiana. Ms. Nearon claims that Menard, Inc. negligently failed to clean up the puddle of water that caused her fall. Her husband, Ronald Nearon, filed a related claim for loss of consortium. Menard responded with this motion for summary judgment [DE 12], which argues that Menard did not have actual or constructive notice of the puddle and thus had no duty to clean it up. The parties have now briefed this motion and it is ripe for review. [DE 13]; [DE 28]; [DE 31].

## FACTS

The facts in this case are largely undisputed. Plaintiffs Myra Jean Nearon and Ronald Nearon went shopping at a Menards store on October 19, 2012. As the couple was walking through one of the store's main aisles near the hardware section, Ms. Nearon slipped on a puddle of water and fell on her back. Neither Ms. Nearon nor Mr. Nearon noticed the puddle before Ms. Nearon fell. After the fall, Ms. Nearon estimated that the puddle was about a foot-and-a-half wide. The Nearons both testified that they did not know how long the water had been on the floor or where it came from.

A videotape shows an area between where Ms. Nearon fell and a customer help desk two to three aisles away, though not the exact location of the fall. It begins twenty minutes before the accident and shows twelve customers and seven employees walking down the aisle where Ms. Nearon fell. Nothing in the video indicates where the water came from or that any customers or employees noticed it.

While it is typical for Menard's customers to report spills when they occur, no customer reported one prior to Ms. Nearon's fall. Additionally, no Menard employee reported a spill to management. Tyler Mullin, a Menard employee, testified that he was at the place where Ms. Nearon fell ten minutes before the accident and found the floor to be clean and dry. Elizabeth Dunning, another Menard employee, testified that she did not believe that the water was on the floor for more than five minutes before Ms. Nearon's fall based on customer traffic in the aisle where the spill occurred.

## STANDARD OF REVIEW

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (internal quotation marks omitted). At the summary judgment stage, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.

## ANALYSIS

Under Indiana law negligence requires: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). The sole issue in this case is whether Menard had a duty to protect Ms. Nearon from the puddle that caused her fall.

Generally, business owners owe invitees a duty of reasonable care. *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012). That duty is articulated by the Restatement (Second) of Torts § 343 (1965):

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Schulz*, 963 N.E.2d at 1144. So, a landowner has a duty to exercise reasonable care to protect its invitees from foreseeable dangers, but not a general obligation to insure their safety. *Id.* As such, actual or constructive knowledge of a hazard "is required to create a duty sufficient to impose liability upon a business owner for injuries sustained by an invitee." *Hayes v. Menard, Inc.*, No. 4:11-CV-00043, 2012 WL 6553109, at *7 (N.D. Ind. Dec. 14, 2012).

*Actual Knowledge*

The Plaintiffs do not dispute that Menard did not have actual knowledge of the water on the floor. [DE 28 at 4-5] ("Plaintiffs have no reason to dispute the Defendant's statement that no one did report the existence of water on the floor . . . nothing in the video [indicates that Menard employees] observed any liquid on the floor."). They also do not present any evidence that could

support a finding that a Menard employee had knowledge of the spill. Accordingly, they must demonstrate that Menard had constructive knowledge of it.

*Constructive Knowledge*

Constructive knowledge exists where a hazard is present "for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if [the business owner, its] agents or employees had used ordinary care." *Schulz*, 963 N.E.2d at 1144.

Menard argues that the water was only on the floor for a few minutes before Ms. Nearon's accident, which precludes a finding of constructive knowledge. It points to the video that shows customers and employees walking down the aisle in the twenty minutes prior to Ms. Nearon's fall—none of whom reported any water on the floor. It says this indicates the water could not have been on the floor for more than a few minutes, since customers typically report spills and Menard employees are trained to watch for and swiftly address them. [DE 12-1 at 2-3]. Furthermore, Mr. Mullin testified that he was at the site of the accident ten minutes before Ms. Nearon fell and found that the floor was clean and dry. [DE 12-2 at 3]. Ms. Dunning also testified that, based on customer traffic in the aisle where the spill occurred, she did not believe that the water was on the floor for more than five minutes before Ms. Nearon fell. [DE 12-1 at 5].

The Plaintiffs respond that the spill must have occurred before the surveillance video began, since the video does not show anybody carrying water or visibly reacting to a spill. That would mean that the water was on the floor for at least twenty minutes before Ms. Nearon's fall. This argument is not persuasive. Since the video does not show the location of Ms. Nearon's fall, it is insufficient to give rise to a fact issue as to how long the puddle was on the floor. At

4

best, it could demonstrate that the spill did not originate from a person that transported water by the camera or a conspicuous splash that would have drawn the attention of nearby store employees. That is unilluminating, however, in light of the myriad potential sources of a small water spill. Indeed, it would seem unlikely that the water originated from a large splash or a person transporting water, since Ms. Dunning testified that no Menard employee used any equipment, machinery or cleaning supplies that could have caused a spill before the accident. [DE 12-1 at 5]. Moreover, the Plaintiffs do not refute Mr. Mullin's testimony that he observed the location of the spill ten minutes before Ms. Nearon's fall and found it to be clean and dry.

Thus, the uncontested evidence demonstrates that the water was on the floor for no more than ten minutes before Ms. Nearon fell. That makes summary judgment appropriate. Courts have repeatedly held that no reasonable jury can find a storeowner to have constructive knowledge of a spill that is only a few minutes old. *See, e.g.*, *Schulz*, 963 N.E.2d at 1145 ("Ten minutes prior to her fall, the floor was clean and dry. Short of imposing a strict liability standard or mandating an employee's presence in every aisle at all times, we conclude that there is no genuine issue of fact in the case before us that Kroger did not have constructive knowledge of the hazardous condition."); *Blackburn v. Menard, Inc.*, No. 2:10-CV-87, 2014 WL 6669489, at *6 (N.D. Ind. Nov. 24, 2014) ("The ten to fifteen-minute period between the time when plaintiff entered the store and the time when plaintiff slipped is not a sufficient amount of time to give defendant constructive notice of the ice near the store's exit . . . summary judgment is appropriate in this case."); *Abels v. Kroger Ltd. P'ship I*, No. 1:14-CV-1301, 2015 WL 7738070, at *3 (S.D. Ind. Dec. 1, 2015) ("The court is therefore left with [undisputed testimony that the defendant's employees] walked through the area just minutes before Plaintiff's fall and did not notice

anything on the floor. No reasonable jury could find, given that short window of time, that Kroger had constructive notice of the clear substance on the floor that caused Plaintiff's fall.").

But even if the Plaintiffs had presented evidence that would permit a reasonable juror to conclude that the water was on the floor for over twenty minutes, they still would not survive summary judgment. The Plaintiffs contend that "the facts presented permit the conclusion that the water was there but that it was not readily visible." [DE 28 at 5]. That could explain why numerous people walked through the aisle where the spill occurred without reporting it or cleaning it up, and perhaps why Mr. Mullin believed the floor to be clean and dry. But if the water was invisible (or close to it), it is entirely unclear how Menard could have discovered it with the exercise of ordinary care. Moreover, it does not appear that there was any reason for Menard employees to scrutinize the floor for foreign substances, since spills were uncommon at this Menards store. [DE 12-1 at 3]. So, if the spill was on the floor for more than twenty minutes, the Plaintiffs have failed to explain how Menard would have "discovered [it] in time to have prevented injury if [Menard] had used ordinary care." *Gasser Chair Co. v. Nordengreen*, 991 N.E.2d 122, 127 (Ind. Ct. App. 2013). That forecloses a finding of constructive knowledge. *See id*. (finding no constructive knowledge of a chair defect where the defendant inspected its chairs daily and there had been no problems reported with the chair that caused the plaintiff's injuries).

Thus, the Plaintiffs have failed to present evidence that Menard had actual or constructive knowledge of the puddle that caused Ms. Nearon's fall. They do not dispute that Menard did not have actual notice of that hazard. And the uncontested evidence indicates that the puddle was on the floor for no more than ten minutes, which precludes a finding of constructive knowledge. Further, even if the puddle was on the floor for more than ten minutes, the Plaintiffs have not

6

indicated how Menard should have been able to discover it in the exercise of ordinary care. Accordingly, the Plaintiffs have failed to present evidence that Menard had a duty to protect Ms. Nearon against the puddle that caused her fail. Since that is an essential element of Ms. Nearon's negligence claim, summary judgment for the Defendant is proper on that count. Moreover, because establishing negligence was a prerequisite to Mr. Nearon's loss of consortium claim, summary judgment for the Defendant is appropriate on that count as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's motion for summary judgment [DE 12] and directs the Clerk to enter judgment for Menard, Inc. against Myra Jean Nearon and Ronald Nearon.

SO ORDERED.

ENTERED: February 16, 2016

                                                  /s/ JON E. DEGUILIO
                                                  Judge
                                                  United States District Court